NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3324

HAROLD E. HUGHES,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

_____

DECIDED: March 8, 2006

_____

Before LOURIE, GAJARSA, and DYK, Circuit Judges.

PER CURIAM.

Harold E. Hughes petitions for review of the final decision of the Merit Systems Protection Board ("Board") sustaining his dismissal from the agency. Hughes v. Dep't of Treasury, No. AT-0752-04-0812-I-1 (M.S.P.B. June 20, 2005). We affirm.

BACKGROUND

Harold E. Hughes was formerly a Contact Representative, GS-8, Internal Revenue Service ("IRS"), Chamblee, Georgia. Hughes v. Dep't of Treasury, No. AT-0752-04-0812-I-1, slip op. at 1 (M.S.P.B. November 8, 2004) ("Initial Decision"). Effective July 2, 2004, the agency removed Hughes from his position based upon charges that he (1) struck another employee in the workplace; (2) caused a disturbance

in the workplace; and (3) conducted unauthorized personal business during work hours. Id., slip op. at 2. Hughes timely appealed his removal to the Board on August 2, 2004.

All three charges stemmed from a single incident that purportedly occurred on February 3, 2004. In a hearing before the Administrative Judge ("AJ"), numerous witnesses gave their account of what they witnessed that day. Neither party disputes that on the day in question Hughes, who worked on the fourth floor, went up to the sixth floor to visit another IRS employee, Charlene Gooden. Id. From that point on, however, each party has its own account of what happened. According to the AJ, Hughes testified that he approached Gooden's work cubicle and unintentionally frightened her. Id., slip op. at 3. The AJ also recounted that Hughes testified that this caused Gooden to scream, which in turn startled him and "caused him to fall into her." Id. Gooden testified to a much different sequence of events. According to the AJ, Gooden testified that after Hughes approached her cubicle, she "motioned him away and turned her back toward her computer. At this point in time, Gooden testified that [Hughes] struck her with his fist in the shoulder area and in her underarm area." Id., slip op. at 3-4. Moreover, the AJ noted Gooden's testimony that the punches left bruises on her arm. Id. at 4.

In addition to Hughes's and Gooden's testimony, the AJ also heard testimony from Levora Holmes and Pia Stringer. According to the AJ, Holmes testified that "she heard 'scuffle/wrestling' followed by a 'scream' of 'fear' and 'surprise'" emanating from Gooden's cubicle and then she saw Hughes "walking away quickly." Id., slip op. at 5. According to the AJ, Stringer testified that on the date of the incident, Hughes stopped her at the elevator as she was going to the restroom. Id., slip op. at 7. Stringer then

purportedly testified that Hughes asked her to go to Gooden and tell her that "he 'was sorry' and 'didn't mean to hit her,'" and that "he was 'crying' and 'very sorry.'" Id.

After considering that testimony, the Administrative Judge ("AJ") found, by a preponderance of the evidence, that Hughes attacked Gooden, thereby sustaining the first charge. Id. According to the AJ, Hughes was evasive when he was confronted by Holmes on the day of the incident. The AJ found it particularly suspicious that Hughes refused to tell Holmes on the day of the incident the events that he says occurred during the hearing. The AJ also found persuasive Stringer's testimony that he told her that he was sorry he hit Gooden. Id. Finally, the AJ did not believe Hughes's testimony that he jumped back when Gooden screamed and then fell forward to unintentionally inflict the injury. Id.

Based on his conclusion that Hughes did in fact attack Gooden, the AJ also surmised that the incident clearly caused a disruption in the office, thereby sustaining the second charge of causing a disturbance in the workplace. Id. For example, the AJ noted that Holmes left her office because of the incident and had to take steps to remove Hughes from the building. Id. The AJ also determined that the third charge was sustained because Hughes lacked permission to visit Gooden for the purpose of conducting personal business during work hours. Id.

In determining the reasonableness of the penalty of removal, the AJ accepted Hughes's counsel's stipulation that "if one or more of the charges are sustained in whole or in part, there is a causal relationship or nexus between that conduct and the efficiency of the service." Id., slip op. at 8. The AJ also concluded that based on the seriousness of the offense, including Hughes's counsel's acknowledgment that if the

first charge was sustained the penalty of removal was warranted, and Hughes's prior record of discipline, the penalty of removal was proper in this case.

The Board denied Hughes's petition to reconsider the AJ's initial decision, rendering that decision final. Hughes timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Ellison v. Merit Sys. Prot. Bd., 7 F.3d 1031, 1034 (Fed. Cir. 1993). The Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

On appeal, the only errors of law or procedure by the Board that Hughes asserts are that the Board failed to consider that the agency did not abide by its own guidelines for penalty determinations and that he was denied an opportunity to write a statement regarding the incident. Otherwise, Hughes's appeal consists mostly of challenges to the sufficiency of the Board's findings that Hughes actually punched Gooden, e.g., that there were no eyewitnesses to Hughes striking Gooden and that he had not been provided with any pictures showing the injuries that Gooden allegedly suffered.

Regarding his claim assigning errors of law or procedure to the Board, we note that the penalty guidelines that Hughes cites are only applicable when an attack is provoked or if the person attacked suffers no injury. Hughes's attack, however, was not alleged to have been provoked, and the Board found that Gooden did suffer injuries from the attack. Thus, the penalty guidelines that Hughes relies upon are inapplicable. On the contrary, under the relevant guidelines, when an attack is unprovoked and the victim suffers injury, removal is appropriate even if it is a first offense. There was also no error of law or procedure in not allowing Hughes the opportunity to write a statement concerning the alleged attack. Indeed, Hughes was afforded a hearing in which he was given more than a sufficient opportunity to testify to his account of what had happened on the date of the incident.

As for the Board's factual findings that Hughes punched Gooden and caused her injury, we conclude that there was substantial evidence in the record to support those findings. Although there may not have been an eyewitness to Hughes punching Gooden, other than Gooden, the testimony of Holmes and Stringer provided more than adequate circumstantial evidence to support the Board's factual finding. See Jacobs v. Dep't of Justice, 35 F.3d 1543, 1546 (Fed. Cir. 1994) ("Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 299 (1938)). Moreover, although Hughes may not have been provided with an actual photograph of Gooden's injuries, the hospital report in the record indicating that Gooden had bruises is substantial evidence that she suffered injuries from her encounter with Hughes.

Finally, there is no basis for Hughes's claim that the Board failed to consider relevant factors in sustaining the penalty of removal, viz., that he was a twelve-year veteran of military service, was regularly given high evaluation marks, and had more than 18 years of service with the IRS. Hughes's prior military service is not relevant to this appeal. Moreover, the Board did consider Hughes' past work evaluations and tenure at the agency, but concluded that those factors did not sufficiently mitigate the seriousness of his offense. Initial Decision, slip op. at 8. We discern no error in the Board's evaluation of those factors. Accordingly, we affirm the Board's decision.